**THOMAS NELSON, INC., Plaintiff,**

v.

**CHERISH BOOKS LTD. and Stanley Reisner, an individual, Defendants.**

**No. 84 Civ. 5474 (LFM).**

United States District Court,
S.D. New York.

Oct. 17, 1984.

Brooks Haidt Haffner & Delahunty by Charles G. Mueller, New York City, for plaintiff.

Jonathan S. Gaynin, New York City, for defendants.

## OPINION

MacMAHON, Senior District Judge.

This is an action for injunctive relief and damages brought by Thomas Nelson, Inc., a Tennessee corporation engaged in the publication of romance novels, against Cherish Books Ltd., a New York corporation engaged in the same business. The parties stipulated that trial on the merits be advanced and consolidated with the hearing on the application for a preliminary injunction. Fed.R.Civ.P. 65(a)(2). Accordingly, the action was tried to the court, without a jury, on September 18 and 19, 1984.

Plaintiff seeks to enjoin defendants permanently from using the term CHERISH ROMANCES and a heart-shaped design, or any other designation similar to plaintiff's trademark, in connection with the publication of paperback romance novel series.

Plaintiff also seeks to require defendants to deliver up for destruction all material in the control of defendants containing the words CHERISH ROMANCES. Finally, plaintiff seeks compensatory and punitive damages.

Defendants generally deny the significant allegations of the complaint and counterclaim under common law trademark and unfair competition, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1982), and Section 368–d of the New York General Business Law (McKinney 1984). Defendants seek dismissal of plaintiff's action, as well as a permanent injunction prohibiting plaintiff, *inter alia*, from using the term CHERISH ROMANCE, compensatory and punitive damages, recall of all of plaintiff's books for destruction, a corrective advertisement, and attorney's fees.

After carefully considering the documents, hearing and observing the witnesses, and considering the arguments of counsel, we find the following facts established by the evidence:

In April 1983, defendant Cherish Books decided to publish a series of romance novels which had been previously published under the imprint Richard Gallen. By early September 1983, Cherish had conceived the mark CHERISH ROMANCE and, using the CHERISH mark, had commenced soliciting orders for the novels. In response, by December 1983, K-Mart Corporation had ordered 150,000 volumes with the CHERISH mark. The first printing of the novels using the mark was on March 20, 1984, and on April 9, 1984 Cherish filed an application for registration of its mark with the United States Patent and Trademark Office. By the end of July 1984, over 240,000 novels had been distributed to every major city in the United States. They were sold to the public by major retail stores and bookstores and were also distributed by national and international distributors. Cherish has expended over $150,000 in connection with the publication and marketing of its books using the mark CHERISH ROMANCE.

In September 1983, plaintiff Nelson, a leading Bible publisher in Tennessee, was considering the publication of a series of Christian romance novels under the mark CHERISH ROMANCES. On October 20, 1983, Nelson initiated a search to determine the availability of the trademark CHERISH for books. Finding no conflicting marks, Nelson announced, in its November 1983 company newsletter, the adoption of a line of novels under the CHERISH mark. Pre-publication sales of the books commenced in April 1984, and on July 2, 1984 Nelson proceeded to distribute the first novel of its series. To date, over 60,000 copies have been sold.

Since all of the issues depend on the merits of defendants' counterclaim for trademark infringement, we first consider the counterclaim.

### INFRINGEMENT

■ It is clear from the foregoing facts that defendant Cherish, not plaintiff Nelson, is the owner of the trademark CHERISH ROMANCE because of its first use of the mark in commerce. Generally, first use for trademark purposes is the date on which the mark is used in connection with established business to identify the product. *Stern Electronics, Inc. v. Kaufman*, 523 F.Supp. 635 (E.D.N.Y.1981), *aff'd*, 669 F.2d 852 (2d Cir.1982). Cherish's first publication and distribution in commerce occurred on March 20, 1984, while Nelson's first publication was not until July 2, 1984. Thus, Cherish's first use predates Nelson's first use by three and one-half months. Accordingly, we find that Cherish is the owner of the trademark CHERISH ROMANCE.

■ In order to establish an action for trademark infringement, Cherish must demonstrate that Nelson's use of the mark is likely to cause confusion or to deceive purchasers as to the source or origin of the novels. Lanham Act § 32, 15 U.S.C. § 1114. In determining the existence of a likelihood of confusion, a number of factors must be considered. Among these are: the strength of the CHERISH mark; the de-

gree of similarity between the two marks; the proximity of the products; actual confusion; and the degree of care likely to be exercised by consumers. *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).

■ Applying these factors, we find that defendant Cherish has demonstrated the requisite likelihood of confusion. The marks in question, CHERISH ROMANCE and CHERISH ROMANCES, are in effect identical. Both are being used to promote, distribute, and sell lines of romance novels to consumers in the United States. Thus, they compete head-to-head displaying virtually the same mark on the same product to the same consumers. Defendant Cherish's books have extensive market penetration both in total number of volumes and in geographical distribution. Such penetration has created in the minds of consumers an identification of the mark with Cherish as the source of the novel. Given the market proximity shown here, Nelson's mark is so similar that it will be likely, indeed it is certain, to lead to confusion among consumers as to the source of the novels. *See Playboy Enterprises, Inc. v. Chuckleberry Pub., Inc.*, 511 F.Supp. 486 (S.D.N.Y.1981), *aff'd*, 687 F.2d 563 (2d Cir.1982). If Nelson is permitted to continue with its publication, it will get a free ride from Cherish's sales, marketing efforts, and good will—all to the detriment of Cherish. *See, e.g., Harlequin Enterprises Ltd. v. Gulf & Western Corp.*, 503 F.Supp. 647 (S.D.N.Y.1980), *aff'd*, 644 F.2d 946 (2d Cir.1981).

Under common law trademark infringement and the Lanham Act, 15 U.S.C. § 1117, Cherish is not required to prove actual damages or loss of sales to support its claim for injunctive relief. *See, e.g., Coca-Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312 (2d Cir.1982); *Monsanto Chem. Co. v. Perfect Fit Products Mfg. Co.*, 349 F.2d 389 (2d Cir.1965), *cert. denied*, 383 U.S. 942, 86 S.Ct. 1198, 16 L.Ed.2d 206 (1966). It is sufficient that Cherish has demonstrated that sales of its novels will probably be harmed if Nelson

continues to publish its novels under the CHERISH ROMANCES mark.

In view of the likelihood of confusion and the irreparable injury to defendant should plaintiff Nelson continue to use the CHERISH mark, we grant defendants' prayer for a permanent injunction.

Defendants also seek compensatory and punitive damages, recall of all of plaintiff's books for destruction, a corrective advertisement, and attorney's fees. Compensatory damages are not appropriate for specific damages were not proven at trial, and plaintiff's sales have not been profitable to date. Any damages would be merely speculative in the absence of a showing of loss of sales or actual confusion. Punitive damages are also inappropriate for defendants have failed to demonstrate any fraud, bad faith, or malice on the part of plaintiff. There is no evidence that plaintiff knowingly and deliberately copied defendant Cherish's mark or that plaintiff had the slightest hint of defendant's use of the mark prior to plaintiff's adoption of its similar mark.

After balancing the burdens and expense of a recall and destruction of all of plaintiff's publications bearing the mark CHERISH ROMANCE against the probable benefits, we deny defendants' request for a recall and destruction. *See, e.g., Ideal Industries, Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018 (7th Cir.1980). However, in view of plaintiff's misleading advertisement in the August 31, 1984 issue of *Publisher's Weekly*, we order that plaintiff pay for a corrective advertisement in the next available issue of *Publisher's Weekly*.

■ Finally, we deny defendants' request for attorney's fees. Pursuant to the Lanham Act, 15 U.S.C. § 1117, attorney's fees may be awarded in "exceptional" cases. This case is not an exceptional one. Plaintiff has demonstrated that it was acting upon the advice of counsel in bringing this action for trademark infringement. Absent adequate evidence of bad faith, malice, or fraud, attorney's fees are not appropriate under the statute. *Blue Bell,*

*Inc. v. Jaymar-Ruby, Inc.,* 497 F.2d 433 (2d Cir.1974).

The foregoing opinion constitutes this court's findings of fact and conclusions of law, pursuant to Fed.R.Civ.P. 52.

Accordingly, the Clerk of the court is directed to enter judgment dismissing plaintiff's action with costs and granting defendants' counterclaim. The parties are directed to settle a form of judgment within ten (10) days granting a permanent injunction against plaintiff with costs and a corrective advertisement, and denying other relief consistent with this opinion.