**TAKECARE CORPORATION,**
**Plaintiff–Appellee,**

v.

**TAKECARE OF OKLAHOMA, INC.,**
**Defendant–Appellant.**

No. 88–1271.

United States Court of Appeals,
Tenth Circuit.

Nov. 17, 1989.

Harris Zimmerman (Michael J. Cronen, Oakland, Cal., and N. Kay Bridger–Riley of Zarbano, Bridger–Riley, P.C., Tulsa, Okl., with him on the briefs), Oakland, Cal., for plaintiff-appellee.

Donald M. Bingham of Chapel, Wilkinson, Riggs & Abney, Tulsa, Okl., for defendant-appellant.

Before HOLLOWAY, Chief Judge, and MOORE and TACHA, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

The Lanham Act permits a prevailing party to recover attorney fees "in exceptional cases." 15 U.S.C. § 1117(a). In this appeal, we are asked to decide whether defendant's reliance on the advice of counsel removes his otherwise wilful conduct from § 1117(a) sanction. Under the circumstances of this case, we hold it does not because of the absence of any evidence establishing reasonable reliance. We therefore affirm the district court.

I.

The issue before us arises from an action for infringement of a federally registered trademark. In 1983, plaintiff TakeCare Corporation (TakeCare), a health maintenance organization (HMO) incorporated in California and offering its services in northern California, registered its service mark "TakeCare" in the United States Office of Patent and Trademark.[1] TakeCare is an affiliate of Blue Cross of California, which is an affiliate of the national Blue Cross and Blue Shield Association. TakeCare offers prepaid group medical services

---

1. TakeCare had used the mark since 1978.

to employees of both California-based and national businesses. In early 1983, representatives of TakeCare attended a Blue Cross/Blue Shield National ADS Conference along with representatives of an Oklahoma HMO, Total Care. In October 1983, representatives of Total Care visited TakeCare's California offices for instruction and assistance in setting up their Oklahoma HMO. In the course of this visit, these Oklahoma representatives exchanged their business cards which bore the mark, TAKECARE.[2] TakeCare's initial protest was followed by a written demand to defendant TAKECARE to cease and desist using the same service mark. Despite a later meeting to negotiate this disagreement, defendant continued to represent itself as TAKECARE to local and national businesses whose employees reside in its Tulsa, Oklahoma, service area. In 1984, TakeCare filed suit for false designation of origin, false description, and infringement of federal and common law trademark rights.[3]

After a three-day trial to the court, supplemented by post-trial briefs and proposed findings of fact and conclusions of law submitted by TakeCare and defendant, the district court found that as members of the national Blue Cross/HMO network, both TakeCare and defendant often solicited and negotiated contracts with some of the same national businesses. Although their immediate services were confined to distinct geographical areas, the court found that because each HMO permitted subscribers to receive emergency medical or other care outside of the service area there was an additional likelihood of confusion about the reimbursement source of the services. Consequently, the court held a likelihood of confusion existed between the TakeCare mark and defendant's TAKECARE mark.

Having used and registered its service mark prior to defendant's adoption of a similar mark and having informed defendant of this use along with a demand for defendant to cease using the mark, TakeCare, the court concluded, was entitled to a permanent injunction to protect its exclusive use from defendant's infringement. In addition, the court held that defendant's continued use of the mark without explanation after notice from TakeCare amounted to a wilful and deliberate infringement, sufficient to characterize the case as exceptional, meriting an award of attorney fees.

Defendant moved to amend the findings of fact and for a new trial and to amend the judgment to permit documentary evidence to be introduced to show its good faith reliance on the advice of counsel in order to strike the award of attorney fees. The district court rejected defendant's arguments, in particular, its offer to produce a ten-page letter written by counsel on which, defendant asserted, it had relied in good faith. The court eschewed the offer, noting that a key issue at trial, why the defendant continued to develop and market its HMO after notice of the infringement, ought to have triggered defendant's production of this explanation then. Thus, to reopen the case after final judgment to present this expanded theory would be improper under Fed.R.Civ.P. 59(a).

## II.

Defendant, taking issue with no other factual findings or conclusions of law, now urges the district court erred in exercising its equitable power to award attorney fees upon concluding this was the type of "exceptional case" contemplated by 15 U.S.C. § 1117(a).[4] Instead, defendant urges we

---

**2.** In 1983, officers of Total Care incorporated the organization under the name TAKECARE OF OKLAHOMA, INC. In 1984, the name was changed to TAKECARE PREPAID HEALTH SERVICE OF OKLAHOMA, INC. TAKECARE, as it was generally called, was licensed through the national Blue Cross and Blue Shield Association.

**3.** Defendant counterclaimed to invalidate the trademark on the ground of fraudulent procure-

ment. The district court's denial of that claim is not at issue in this appeal.

**4.** In part, 15 U.S.C. § 1117(a) states: "When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, ... [t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."

insert a "but for" condition to evaluate its otherwise wilful conduct. Indeed, at oral argument, appellate counsel for defendant conceded, although the case was exceptional, defendant's conduct was based on the opinion he received from his attorney, blunting the apparent wilfulness which the court had found and shielding him from attorney fees. Hence, because counsel purportedly advised that the disparity in geographic areas eliminated a trademark problem, defendant's continued use of the same service mark after notice of infringement cannot be judged malicious, fraudulent, deliberate, or wilful. Defendant cites *VIP Foods, Inc. v. Vulcan Pet, Inc.*, 675 F.2d 1106 (10th Cir.1982), in which this circuit embraced the definition found in the legislative history of 15 U.S.C. § 1117(a). *See* H.R.Rep. No. 93–524, 93d Cong., 1st Sess. 2 (1973); S.Rep. No. 93–1400, 93d Cong., 2d Sess. 4, *reprinted in* 1974 U.S. Code Cong. & Admin.News 7132, 7133.

TakeCare responds that defendant does not challenge those findings which formed the basis for the court's award of attorney fees: (1) that defendant was aware of plaintiff's mark and chose to copy it; (2) that defendant could have discontinued its infringing use without hardship after the October 1983 notification but continued to develop and market its service; and (3) that defendant offered no explanation for this conduct. TakeCare asserts defendant's mere statements about reliance, without any support in the record, are insufficient to upset the district court's exercise of discretion.

### A.

A trademark identifies a source, a particular good or service which the consumer has found to be satisfactory. *See* 1 J. McCarthy, *Trademarks and Unfair Competition* § 2:1 (1984). Thus, what is infringed is not the mark itself but "the right of the public to be free of confusion and the synonymous right of a trademark owner to control his product's reputation." *General Elec. Co. v. Speicher*, 877 F.2d

531, 535 (7th Cir.1980) (quoting *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir.1976)). The district court's finding the public was, in fact, confused predicated its aligning all the underlying factual findings to decide, "subject to the principles of equity," the case was exceptional under 15 U.S.C. § 1117(a).

Running through the case law, which has developed around a § 1117(a) award of attorney fees, is the implicit recognition that some degree of bad faith fuels the infringement at issue. *See, e.g., Gorenstein Enter., Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431 (7th Cir.1989); *Spring Mills, Inc. v. Ultracashmere House, Ltd.*, 724 F.2d 352 (2d Cir.1983). In *Gorenstein*, 874 F.2d at 435, for example, defendant continued to use plaintiff's trademark after its franchise was terminated, claiming the right to continue using the mark while rescission was sought even though defendant had previously argued abandonment and acquiescence. That type of persistent misuse, the Seventh Circuit found, could only be characterized as deliberate, wilful, malicious and fraudulent. Thus, the presence of bad faith endows defendant's conduct with not only the knowledge that the act is wrongful but also the commitment to proceed anyway. *See also Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378 (9th Cir.1984).

■ Nevertheless, we agree that, under certain circumstances, a party's reasonable reliance on the advice of counsel may defuse otherwise wilful conduct. In *Cuisinarts, Inc. v. Robot–Coupe Int'l Corp.*, 580 F.Supp. 634, 638 (S.D.N.Y.1984), the district court held "if a client seeks counsel's advice in a timely manner, makes adequate disclosure to counsel, receives counsel's opinion and then acts upon it, surely the Chancellor must pause before branding the client as a wilful, deliberate, fraudulent commercial thief...." Absent this showing, counsel's advice alone will not "shield the actor from the consequences of his act." *Id.*[5]

■ Missing from our case, however, is any showing of what counsel advised de-

5. We note parenthetically that the advice of counsel is a protection against the tort of the wrongful initiation of civil proceedings even if

the advice "consists merely of an opinion that the facts so known or believed afford a chance ... that the claim asserted in the civil proceed-

fendant and, thus, defendant's failure to prove reasonable reliance. During trial, defendant corporation's C.E.O., Mr. Ralph S. Rhoades, explained how he had spontaneously and innocently arrived at the name TAKECARE after his dissatisfaction with the name Total Care. He testified that he disliked the name Total Care not only because he thought it was misleading, the benefit plan offered had limitations, but also because a Missouri HMO used a similar name. Mr. Rhoades testified, "My concern was A: That was their trademark and we couldn't use it, in my judgment, without having some permission from them to use it." (R. III, 353). When asked why the TAKECARE mark did not cause the same concerns, Mr. Rhoades responded, "No, I did not [have the same concerns] because our attorneys had told us it was all right for us to use Takecare [sic] of Oklahoma. I was operating under advice of counsel. We had already obtained our incorporation. We were proceeding with our providers, we were proceeding with our licensure in Oklahoma and our attorneys advised us that we could proceed." (R. III, 355–56). In subsequent testimony, Mr. Rhoades stated that he did not know the extent of his attorney's search but was assured "there was no problem federally as far as they knew, I think to the extent of their investigation...." (R. III, 363). Mr. Rhoades could not recall what searches, in fact, were done; when he was first aware of Take-Care's protest; and what transpired during the Las Vegas meeting with TakeCare. Given Mr. Rhoades' apparent sophistication in business matters and his concern with possible problems from the Missouri HMO, the record remains silent on the key explanation defendant now proffers to answer the question why defendant proceeded to develop its HMO after notice of trademark infringement. Nowhere during trial or in its post-trial brief does defendant specify, in more than conclusory terms, what counsel's advice was to clarify how assurance that the TAKECARE name was available in Oklahoma would satisfy TakeCare's demand to cease and desist using the name nationally.

In *Cuisinarts, Inc.*, 580 F.Supp. 634, the court rejected an award of attorney fees on the ground defendant relied on counsel's advice in fashioning ads which its general and trademark counsel believed were not misleading. In so concluding, the court referenced the ample discovery made available including the deposition of counsel. In *Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70 (2d Cir.1986), the court rejected Universal's argument that it relied on the opinion of outside counsel in bringing an action for trademark infringement, not only because it failed to call outside counsel to testify, but also because outside counsel had already given testimony in a related case which was contrary to Universal's position. In each case, the district court had some means of establishing what the advice was or purported to be. *See also Thomas Nelson, Inc. v. Cherish Books Ltd.*, 595 F.Supp. 989 (S.D.N.Y.1984) (plaintiff demonstrated it was acting on advice of counsel in instituting trademark infringement action when it had not the slightest hint of defendant's use prior to plaintiff's adoption of a similar mark).

B.

While we do not suggest any particular means of establishing good faith reliance on counsel is preferable, we do require some showing other than that offered in post-trial and appellate briefs in order to permit the district court to exercise its discretion properly in awarding attorney fees. On the record before us, defendant, having raised interstate trademark concerns previously, appeared to have relied solely on its counsel's opinion that its trademark was valid in Oklahoma. Under these circumstances, proof of reliance was insufficient. To otherwise now permit defendant to shim up its trial showing and conclude the district court abused its discretion is not warranted.

AFFIRMED.

ings may be upheld." *Restatement (Second) of*    *Torts* § 675, comment g, (1976).