**WINNING WAYS, INC., Plaintiff,**

v.

**HOLLOWAY SPORTSWEAR, INC. and Holloway Group, Inc., Defendants.**

**Civ. A. No. 94–2493–JWL.**

United States District Court,
D. Kansas.

Oct. 30, 1995.

---

1458

James P. O'Hara, Shughart, Thomson & Kilroy, Overland Park, KS, Michael P. Allen, Shughart, Thomson & Kilroy, Kansas City, MO, Charles J. Hyland, Sprint Communications Company L.P., Law Department, Kansas City, MO, for plaintiff.

Edward M. Boyle, Payne & Jones, Chtd., Overland Park, KS, for Holloway Sportswear, Inc., Holloway Group, Inc.

## *MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

Claiming trade dress infringement and unfair competition, plaintiff Winning Ways, Inc., alleges defendants Holloway Sportswear, Inc. and Holloway Group, Inc. violated the Lanham Act, 15 U.S.C. § 1051 *et seq.* (1988), by copying two of plaintiff's jackets. Presently before the court are defendants' six summary judgment motions (Docs. # 82–1—82–6). At the final pretrial conference, held October 23, 1995, the court denied motions No. 2, 3 and 4 (Docs. # 82–2, 82–3, and 82–4) and dismissed motion No. 6 as moot (Doc. # 82–6). For the reasons stated on the

record, the court reaffirms those rulings and incorporates them into this order. As the discussion below indicates, the court also denies motions No. 1 and 5 (Docs. # 82–1 and 82–5).

## I. *Factual Background* [1]

Plaintiff, a Missouri corporation, sells clothing. Prior to 1985, plaintiff's products were distributed primarily through mass merchandisers, department stores, sporting goods stores and private labeling arrangements. Beginning in 1985, plaintiff decided to increase its presence in the college bookstore market. As part of that effort, plaintiff began developing an outerwear line of apparel. By 1989, plaintiff had placed a full outerwear line of Gear for Sports apparel into the college bookstore market.

Plaintiff designed the "Clipper" and "Victory" jackets in 1990. The Clipper incorporates many features of a jacket previously designed by London Fog. The Victory jacket included no feature that had not been used on some product prior to 1990. Utilizing competitors' design features is common practice in the fashion industry. Plaintiff was the first company to combine all of the features used in the Clipper and Victory jackets. Plaintiff does not have a patent or registered trademark on the design of either the Clipper or Victory jacket.

In 1994, defendants began selling their Challenger and Competitor jackets. The Challenger and Competitor jackets intentionally duplicate the Clipper and Victory jackets respectively. On June 22, 1994, defendants obtained a letter from a trademark lawyer stating his opinion that defendants were free to copy plaintiff's jackets.

Plaintiff wrote defendants ordering them to cease and desist all sale, marketing, advertising or promotion of the Challenger and Competitor jackets. Defendants refused to do so. This suit ensued.

## II. *Legal Standard*

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the

nonmoving party. *Jones v. Unisys Corp.,* 54 F.3d 624, 628 (10th Cir.1995). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anglemeyer v. Hamilton County Hosp.,* 58 F.3d 533 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511; *Tersiner v. Union Pacific R.R.,* 740 F.Supp. 1519, 1522–23 (D.Kan. 1990). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2554.

## III. *Discussion*

Each of defendants' summary judgment motions focuses on a specific issue. In motion No. 1, defendants contend that summary judgment on all of plaintiff's claims is appropriate because the patent laws preclude the appearance of a product from being trade dress. In motion No. 5, defendants maintain that no evidence in the record supports the inference that they acted "wilfully" when copying plaintiff's jackets. The court examines each motion in turn.

### A. *Patent Law v. Trade Dress Law*

Plaintiff asserts that the particular combination of features comprising its Clipper and

---

**1.** The following facts are either uncontroverted or presented in a light most favorable to plaintiff.

Victory jackets constitute its trade dress, *i.e.* that the overall appearance of each jacket identifies its source. Defendants respond that they have a right to copy anything within the public domain. Defendants maintain that allowing the jackets themselves to be trademarks impermissibly interferes with their right to copy because only a design patent can remove an entire product design from the public domain.

■ The right to copy items within the public domain exists in the common law and is inherent in the free enterprise system. *See* 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 1.01(2) (3d ed. 1995); *International News Serv. v. Associated Press*, 248 U.S. 215, 250, 39 S.Ct. 68, 76, 63 L.Ed. 211 (1918) (Brandeis, J. dissenting) ("The general rule of law is that the noblest of human productions—knowledge, truths ascertained, conceptions and ideas—become, after voluntary communications to others, free as the air to common use."); *In re Morton–Norwich Products, Inc.*, 671 F.2d 1332 (C.C.P.A.1982) ("[T]here exists a fundamental right to compete through imitation of a competitor's product, which right can only be temporarily denied by the patent or copyright laws."). The Supreme Court has repeatedly endorsed this concept. *See, e.g. Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 165, 109 S.Ct. 971, 984, 103 L.Ed.2d 118 (1989); *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 232–33, 84 S.Ct. 784, 789–90, 11 L.Ed.2d 661 (1964); *Compco Corp. v. Day–Brite Lighting, Inc.*, 376 U.S. 234, 238, 84 S.Ct. 779, 781, 11 L.Ed.2d 669 (1964); *accord Vornado Air Circulation Systems, Inc. v. Duracraft Corp.*, 58 F.3d 1498, 1505 (10th Cir. 1995).

Patents, trademarks, and copyrights are exceptions to the right to copy. 1 McCarthy, *supra*, § 1.01. Thus, in the abstract, if an item meets the requirements for trade dress protection, then granting trade dress status does not impermissibly interfere with the right to copy. The matter becomes considerably more complicated when analyzed in the light of patent law concepts that potentially implicate the extent to which judge made trademark protection is properly extended.

■ Patents for inventions, 35 U.S.C. § 101, and designs, 35 U.S.C. § 171, are the principal protection afforded to intellectual property embodied in products. *Stormy Clime, Ltd. v. ProGroup, Inc.*, 809 F.2d 971, 978 (2d Cir.1987). To obtain a design patent, the design must be new, original, nonobvious and ornamental. *See Sidewinder Marine, Inc. v. Starbuck Kustom Boats and Products, Inc.*, 597 F.2d 201, 207–208 (10th Cir. 1979); 35 U.S.C. § 171.

The purposes of the patent system are threefold:

First, patent law seeks to foster and reward invention; second, it promotes disclosure of inventions to stimulate further innovation and to permit the public to practice the invention once the patent expires; third, the stringent requirements for patent protection seek to assure that ideas in the public domain remain there for the free use of the public.

*Vornado Air Circulation Systems,* 58 F.3d at 1507 (citing *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262, 99 S.Ct. 1096, 1099, 59 L.Ed.2d 296 (1979)). The second purpose, to encourage public disclosure and use of inventions, is the "centerpiece of federal patent policy." *See id.* (citing *Bonito Boats, Inc.*, 489 U.S. at 157, 109 S.Ct. at 980; *Goldstein v. California*, 412 U.S. 546, 569, 93 S.Ct. 2303, 2315, 37 L.Ed.2d 163 (1973); *Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 255–56, 66 S.Ct. 101, 104–05, 90 L.Ed. 47 (1945); *Singer Mfg. Co. v. June Mfg. Co.*, 163 U.S. 169, 184, 16 S.Ct. 1002, 1007, 41 L.Ed. 118 (1896)).

■ The potential conflict between the patent laws and the trademark laws is readily apparent. The patent laws grant the patent holder an exclusive monopoly over an item in exchange for the item's public disclosure and eventual public use. Trademark law attempts to ensure that consumers will not be confused as to the source of a product.[2] Granting trade dress protection to an

---

**2.** In order to prove trade dress infringement, a plaintiff must show two things. First, the product's trade dress must (a) be inherently distinctive or (b) have acquired secondary meaning so

item for which a patent has expired creates tension because the product may have obtained secondary meaning or inherent distinctiveness precisely because the product was patented. If so, the trade dress protection does not have an independent basis and effectively extends the monopoly granted by the patent. This partially thwarts the patent laws' goals. Although the designer has been encouraged to disclose his or her design, the public's access remains restricted even though the patent inspired monopoly period has expired.

Defendants carry this analysis further. They contend that the purposes of the patent laws compel the conclusion that only a design patent can remove an entire product from the public domain. They claim that under no circumstances can a product itself constitute trade dress. The court does not agree that the law has been extended—or, perhaps, contracted—that far.

■ "Trade dress is, of course, potentially the subject matter of design patents." *Bonito Boats, Inc.,* 489 U.S. at 154, 109 S.Ct. at 978 (citing *W.T. Rogers Co. v. Keene,* 778 F.2d 334, 337 (7th Cir.1985). As a result, "[c]ourts must proceed with caution in assessing claims to unregistered trademark protection in the design of products so as not to undermine the objectives of the patent laws." *Stormy Clime Ltd.,* 809 F.2d at 977–78. Nevertheless, as the Tenth Circuit has acknowledged, overall appearance may constitute trade dress under appropriate circumstances. *See, e.g., Hartford House, Ltd. v. Hallmark Cards, Inc.,* 846 F.2d 1268, 1274 (10th Cir.1988) (holding that "the overall appearance of [the plaintiff's greeting cards]

constitutes a trade dress"); *Brunswick Corp. v. Spinit Reel Co.,* 832 F.2d 513, 517 (10th Cir.1987) (" '[T]rade dress' in its more modern sense may refer to the appearance of the product itself.") (citing *American Greetings Corp. v. Dan–Dee Imports, Inc.,* 807 F.2d 1136, 1140 (3d Cir.1986)); *accord John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966 (11th Cir.1983) ("Recently, however, courts have recognized that the design of a product itself may constitute protectable trade dress under § 43(a) of the Lanham Act.") (citing *Warner Bros., Inc. v. Gay Toys, Inc.,* 658 F.2d 76 (2d Cir.1981); *Harlequin Enterprises Ltd. v. Gulf & Western Corp.,* 644 F.2d 946 (2d Cir.1981); *Truck Equipment Serv. Co. v. Fruehauf Corp.,* 536 F.2d 1210 (8th Cir.1976)).

The Tenth Circuit has recently reaffirmed this position. In *Vornado Air Circulation Systems, Inc. v. Duracraft Corp.,* 58 F.3d 1498, 1502 (10th Cir.1995), the court explicitly stated "that although in the past, trade dress infringement [ ] consisted of copying a product's packaging, 'trade dress' modernly could also refer to the appearance of the product itself." Moreover, the court's repeated emphasis that not every product configuration will be protected[3] further suggests, albeit indirectly, that some products' appearance may qualify as trade dress. *Id.* at 1500, 1506, 1506 n. 16, 1510.

■ The *Vornado* court did give great weight to the right to copy. Nevertheless, *Vornado* does not compel acceptance of the position defendants advance here: that the right to copy precludes any attempt to afford trade dress protection to any product configuration under any circumstances.[4] Defen-

---

that its primary significance in the minds of potential consumers is to indicate its source or brand. Second, the plaintiff must show that potential customers are likely to be confused by the defendant's trade dress into thinking that the defendant is affiliated, connected or associated with the plaintiff or that the defendant's goods originated with, or are sponsored or approved by the plaintiff. *Vornado Air Circulation Systems,* 58 F.3d at 1502–03.

3. Indeed, the product configuration in *Vornado* ultimately was denied trade dress protection. *Id.* at 1510.

4. By this ruling, the court does not intimate whether or not the reasoning of *Vornado* would preclude trade dress protection of plaintiff's jackets under the circumstances of this case. *Vornado's* reasoning is potentially far reaching. The Tenth Circuit, however, expressly stated that it was not determining "whether every useful or potentially patentable product configuration is excluded from trade dress protection." *Id.* at 1503. Nor did the Tenth Circuit decide "whether utility patents should be viewed differently than design patents, as some courts have held." *Id.* at n. 11 (citations omitted). Finally, *Vornado* does not address directly other issues that may impact on whether trade dress protection is appropriate here such as (1) whether the tension

dants can point to no case reaching that conclusion. Nor has the court's own research found such a case. Accordingly, defendants broad summary judgment motion is denied.

### B. *Wilfulness*

■ In motion No. 5, defendants claim that the record contains no evidence suggesting that their actions were wilful. Indeed, defendants maintain that the record supports the opposite conclusion because the record includes a letter from defendants' trademark counsel stating his opinion that defendants could freely copy plaintiff's jackets.

Whether or not defendants' actions were wilful potentially impacts two issues at trial. First, before ordering an accounting of profits, some courts have required that a defendant's infringement be wilful. *E.g. Bambu Sales, Inc. v. Ozak Trading Inc.,* 58 F.3d 849, 854 (2d Cir.1995); *George Basch Co. v. Blue Coral Inc.,* 968 F.2d 1532, 1534 (2d Cir.1992). The Tenth Circuit, however, has not indicated whether it follows these cases. Second, wilful infringement might qualify a case as "exceptional" under 15 U.S.C. § 1117(a), which would authorize an award of attorneys' fees. Plaintiff has the burden at trial to prove wilfulness for either purpose. *George Basch Co.,* 968 F.2d at 1539; *see also Take-Care Corp. v. Takecare of Oklahoma, Inc.,* 889 F.2d 955, 957 (10th Cir.1989) (holding that defendant's failure to prove reasonable reliance on counsel's advice precluded the advice of counsel defense to a finding of wilfulness).

By claiming that the record includes no evidence of wilfulness, defendants have satisfied their initial summary judgment burden. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The burden therefore shifts to plaintiff to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

Plaintiff's only response is that a fact question exists regarding whether or not defendants can prove they did not act wilfully. Plaintiff misapprehends its burden of proof to avoid summary judgment. The advice of counsel is a defense to a finding of wilfulness. *See TakeCare Corp.,* 889 F.2d at 957. To avoid summary judgment, plaintiff must point to specific facts that at least raise the inference that defendants acted wilfully, which in the attorney's fees context means deliberate, malicious and fraudulent actions. *Id.* (citation omitted). Although plaintiff's brief does not specifically cite it, however, evidence does exist in the record from which an inference that defendants acted wilfully could be drawn.

In *TakeCare,* the district court held that the "defendant's continued use of the mark without explanation after notice from Take-Care amounted to a wilful and deliberate infringement." *Id.* at 956. Here, defendants admit that even though plaintiff notified them claiming trade dress infringement, defendants continue to sell both the Challenger and Competitor jackets. Defendants' Answer to First Amended Complaint, ¶¶ 15, 37. That admission raises an inference to which plaintiff is entitled for these purposes that defendants have acted wilfully. That inference preserves this issue for trial. Defendants' motion for summary judgment No. 5 is, therefore, denied.

### IV. *Order*

**IT IS THEREFORE BY THE COURT ORDERED** that defendants' motion for summary judgment No. 1 (Doc. # 82–1) is denied.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment No. 2 (Doc. # 82–2) is denied.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment No. 3 (Doc. # 82–3) is denied.

---

between patent and trademark law differs if the item could not have been patented as opposed to if the item simply was not patented; (2) whether the absence of a patent reduces the tension between patent and trademark law because any secondary meaning or inherent distinctiveness would not be gained through patent protection; or (3) whether a conflict between patent and trademark law exists in the absence of a patent because the right to copy exists independently from the patent laws. Some of these issues may move center stage at the trial of this case.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment No. 4 (Doc. # 82–4) is denied.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment No. 5 (Doc. # 82–5) is denied.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment No. 6 (Doc. # 82–6) is dismissed as moot.

**IT IS SO ORDERED.**