**WARNER BROS., INC.,**
**Plaintiff-Appellant,**

v.

**GAY TOYS, INC., Defendant-Appellee.**

**No. 1598, Docket 81–7373.**

United States Court of Appeals,
Second Circuit.

Argued June 11, 1981.
Decided Aug. 24, 1981.

Cowan, Liebowitz & Latman, P. C., New York City (Carol F. Simkin, New York City, of counsel), and Weiss, Dawid, Fross, Zelnick & Lehrman, New York City, (Michael Davis, New York City, of counsel), for plaintiff-appellant.

Milton Wolson, New York City, and Robert G. Mentag, Detroit, Mich., for defendant-appellee.

Before OAKES and KEARSE, Circuit Judges, and RE,* Chief Judge.

RE, Chief Judge:

Plaintiff-appellant, Warner Bros., Inc., appeals from the denial of a motion for a preliminary injunction brought to halt the use by the defendant-respondent, Gay Toys, Inc., of certain non-functional, distinctive symbols in the manufacture and sale of defendant's toy car, the "Dixie Racer".

Warner Bros. contends that the unauthorized use of these symbols by Gay Toys constitutes a violation of § 43(a) of the Lanham Trademark Act of 1946, 15 U.S.C. § 1125(a), and also of the laws of the State of New York, relating to misappropriation and unfair competition. Warner Bros. states that the use of these symbols by Gay Toys causes confusion in the public's mind as to the manufacture and sponsorship of the toy car. Furthermore, it gives rise to the false assumption by the public that Gay Toys' "Dixie Racer" is an authorized reproduction of the "General Lee", an orange, 1969 Dodge Charger with a Confederate flag emblem, prominently featured on "The Dukes of Hazzard", Warner Bros.' successful T.V. series.

It is necessary to examine the scope of Section 43(a) to insure that its protection extends beyond registered trademarks to include unregistered marks such as those at bar. 15 U.S.C. § 1127 provides that "The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce, . . .

* The Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation.

[and] to protect persons engaged in such commerce against unfair competition." *See also, Alfred Dunhill Ltd. v. Interstate Cigar Company Inc.*, 499 F.2d 232, 236 (2nd Cir. 1974). This law includes protection against the infringement of common law trademarks. *Beech-Nut Inc. v. Warner Lambert Company*, 480 F.2d 801 (2nd Cir. 1973). Therefore, registration is not a requirement for protection under the Lanham Act.

■ Section 43(a) has been held to encompass a broad spectrum of marks, symbols, design elements and characters which the public directly associates with the plaintiff or its product. *Perfect Fit Industries Inc. v. Acme Quilting Co.*, 618 F.2d 950 (2nd Cir. 1980), and *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200 (2nd Cir. 1979). This protection has been held to extend to the specific ingredients of a successful T.V. series. *D. C. Comics Inc. v. Filmation Associates Inc.*, 486 F.Supp. 1273, 1277 (S.D.N.Y.1980). Therefore, it is clear that the "General Lee symbols" fall within the ambit of Section 43(a).

In its Memorandum and Order, the District Court for the Southern District of New York, 513 F.2d 1066, denied the motion for a preliminary injunction on the ground that there could be no proof of confusion because Warner Bros. was not in the business of manufacturing toy cars. The Court further found that the purchasers of the "Dixie Racer" were not concerned with who manufactured the toy, or whether its manufacture was sponsored by the producer of the T.V. series.

The question presented is whether the District Court erred in finding that the plaintiff, Warner Bros., failed to show a likelihood of confusion as to the source or sponsorship of the defendant, Gay Toys' product.

Since we find that there is sufficient likelihood of confusion as to the source and sponsorship of the toy car to fall within the scope of the Lanham Act, we reverse. We also find that Gay Toys deliberately utilized these symbols to capitalize on the demand created by "The Dukes of Hazzard" and the "General Lee", in order to divert business and increase its sales by misleading consumers as to the source and sponsorship of the "Dixie Racer".

The essential facts are not disputed. Moreover, Gay Toys concedes that it specifically attempted to exploit the market created by Warner Bros.' efforts. Prior to the success of "The Dukes of Hazzard", Gay Toys produced a 1969 Dodge Charger toy car, but without the bright orange color, the Confederate flag decal, or the door numerals which Warner Bros. contends are its proprietary marks, and the symbols of the "General Lee". Upon becoming aware of the tremendous sales potential of a "General Lee" replica, Gay Toys unsuccessfully sought a license from the Licensing Corporation of America, Warner Bros.' subsidiary licensing agent, to produce a toy car which would utilize these distinctive symbols. Because of pre-existing exclusive agreements with other toy manufacturers, Warner Bros. refused to grant a license. Gay Toys, nevertheless, proceeded to manufacture and distribute the "Dixie Racer", incorporating these symbols. Although it reversed the door numerals from "01" to "10", and refrained from using the appellation, "General Lee", the toy automobile is identical with the "General Lee" in virtually all other respects. This resulted in the sale of over 500,000 toy cars, and back orders for 700,000 more, a much greater quantity than the Gay Toys' earlier model had ever sold.

■ In this action for a preliminary injunction barring Gay Toys from utilizing the "General Lee" symbols in the manufacture, promotion and sale of its "Dixie Racer", the legal standard which must be met by appellant, Warner Bros., is clear. There must be a showing of (A) irreparable harm and (B) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Jackson Dairy, Inc. v. H. P. Hood & Sons*, 596 F.2d 70 (2nd Cir. 1979). This standard applies where a preliminary injunction is sought as relief for alleged trademark in-

fringement. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d at 206–207.

In examining Warner Bros.' substantive position, the District Court properly held that "the basic inquiry in an unfair competition action is whether the public is likely to be misled into believing that the defendant is distributing products manufactured or vouched for by the plaintiff". At 1068. *See American Marietta Co. v. Krigsman*, 275 F.2d 287 (2nd Cir. 1960).

■ Although it is necessary to prove that the buying public was actually deceived in order to recover damages under § 43(a) of the Lanham Act, *Skil Corp. v. Rockwell International Corp.*, 375 F.Supp. 777 (N.D.Ill.1974), only a likelihood of confusion or deception need be shown in order to obtain equitable relief. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., supra.* Here, since equitable relief is sought, only the likelihood of confusion need be shown, and not proof of actual confusion as was required by the District Court. The uncontroverted facts, as presented in the affidavits, and stipulated to by counsel, fully support this likelihood of confusion. Any lingering doubt is dispelled by the results of Warner Bros.' survey which shows that eight out of ten children respond immediately to the "Dixie Racer" as the "General Lee" or as "The Dukes of Hazzard Car", and the affidavit which confirms that retailers sold the "Dixie Racer" as "Tne Dukes of Hazzard Car".

■ The District Court properly inferred that "many children buy the car (or induce their parents to buy it for them) as a prop for play in which they pretend they are 'the Duke Boys' of television fame". It is clear that many of the consumers did confuse the "Dixie Racer" with the "General Lee" and assumed that the car was sponsored by Warner Bros. This is sufficient to invoke the protection of this Court. *Scarves By Vera Inc. v. Todo Imports Ltd. (Inc.)*, 544 F.2d 1167 (2nd Cir. 1976).

Warner Bros. has licensed other toy manufacturers to produce authorized replicas of the "General Lee" through its subsidiary, Licensing Corporation of America. The undisputed facts demonstrate that this was not only the custom and practice of the industry, but also that product licensing arrangements were ultimately more profitable than the T.V. series itself.

■ On the question of competition and the likelihood of confusion, it is not necessary that Warner Bros. actually manufacture the toy cars, but merely that a confusion as to manufacture or sponsorship result. This Court has previously held in *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., supra*, that "[i]n order to be confused, a consumer need not believe that the owner of the mark actually produced the item and placed it on the market. The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement." *Id.* at 204–205 (citations omitted).

We have no doubt that Warner Bros. has met its burden of proof of the likelihood of confusion as to the sponsorship of the "Dixie Racer".

■ We find that Warner Bros. has made a showing of irreparable harm as well as a showing of likelihood of success on the merits. It has a substantial financial interest at stake, and a history of first use of the symbols in this context. Warner Bros. also incurred great expense to publicize the symbols which identify the "General Lee". If the injunction is denied, Warner Bros. and its licensees will suffer substantial lost sales, and its licensing program will lose much of the confidence reposed in it by the licensees, who also made substantial investments based upon the exclusivity of their licenses.

It has been indicated that § 43(a) of the Lanham Act is remedial in nature, and should be interpreted and applied broadly so as to effectuate its remedial purpose. *See Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538, 546 (2nd Cir. 1956) (Clark, J., concurring); *CBS, Inc. v. Springboard International Records*, 429 F.Supp. 563, 566 (S.D.N.Y.1976).

To deny Warner Bros. injunctive relief would be to enable Gay Toys "to reap where [i]t has not sown". *International News Service v. Associated Press*, 248 U.S. 215, 239, 39 S.Ct. 68, 92, 63 L.Ed. 211 (1918).

The Order of the District Court denying the preliminary injunction is reversed.