**WARNER BROS., INC., Plaintiff,**

v.

**GAY TOYS, INC., Defendant.**

**No. 81 Civ. 1880 (WK).**

United States District Court, S.D. New York.

Jan. 5, 1983.

Cowan, Liebowitz & Latman, P.C. by Carol Simkin, Weiss, Dawid, Fross, Zelnick & Lehrman by Michael Davis, New York City, for plaintiff.

Milton M. Wolson, Bernard Malina, New York City, Robert G. Mentag, Detroit, Mich., for defendant.

MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Plaintiff moves for partial summary judgment permanently enjoining defendant from manufacturing or distributing certain toy cars which are concededly patterned after the "General Lee," an automobile which plays a central role in plaintiff's formerly vastly successful television program, "The Dukes of Hazzard." The facts and contentions of the parties are set forth in our original opinion denying plaintiff's motion for a preliminary injunction (513 F.Supp. 1066) and in the Court of Appeals opinion reversing the same (658 F.2d 76). Familiarity with both of those opinions is assumed.

The principal dispute between the parties is whether there exists a viable issue of fact as to whether or not the distribution of defendant's toys has a tendency to foster the false assumption that such distribution is in some way sponsored by plaintiff. Defendant contends that there is no evidence to support the existence of such a tendency. Plaintiff responds that the tendency is conclusively established by the Court of Appeals opinion reversing our denial of temporary injunction. Defendant rejoins that since the Court was dealing only with temporary relief it did not intend its sweeping language to be given full effect, and that it should not be deemed to have foreclosed further examination of the issue. Although this rejoinder may be plausible, our duty is to take the opinion's language at face value, leaving it to the Court to make any modification it may deem appropriate.[1] We therefore grant summary judgment.

As any reversal of our judgment would result in further proceedings, we shall set forth in some detail our understanding of the issues involved and of the Court's resolution thereof so that—should such understanding turn out to be mistaken—the Court may be in a position to give meaningful direction to us and to the parties.

The instant case presents a classic dispute between a producer of television entertainment for children and a manufacturer of children's toys. Successful children's television programs usually produce an intense desire among their viewers to act out the parts of characters in the televised dramas.

This, in turn, creates a market for toys which would assist the children in pursuing their fantasies. In the instant case, a rather striking automobile called the "General Lee" is prominent in plaintiff's show "The Dukes of Hazzard." This creates a great demand for toy facsimiles of the "General Lee."[2] The legal question which the phenomenon poses is whether or not a television producer should be entitled—in addition to whatever direct revenue it may obtain by selling its program to networks and independent stations—to exploit such demand for toy imitations by restricting their distribution to its own licensees. In other words, whether—in the absence of copyright, trademark, or patent protection—a producer can be granted a monopoly over any market created by the popularity of its show.[3]

In cases such as the one at bar—where no copyright, trademark or patent protection can be claimed—the Lanham Act has been used by plaintiffs seeking to enforce restrictions on the distribution of toy imitations. That Act, which deals with fraud and deception ("*false* designations of origin and *false* description"), is by no means an ideal vehicle. However, there appears to exist among toy distributors an assumption (wholly without the support of any fact of which we are aware) that children not only demand facsimile toys adapted to pursuing their fantasies, but also require assurance that the facsimiles be in some way "official" or "sponsored" by the television producer.[4] It is the defendant's contention

1. To the extent that there may be doubt as to the Court's meaning, judicial economy suggests resolving it in plaintiff's favor. Should the Court on appeal decide we had incorrectly granted summary judgment, it could quickly correct the error and instruct us how to proceed. An incorrect denial, on the other hand, would result in considerable further discovery (useless by hypothesis), and in an unnecessary and expensive trial.

2. Imitations of other "Dukes of Hazzard" props are also involved, but the "General Lee" is typical, and is the only one that will be mentioned in this opinion.

3. This question is one of great economic importance. In its Opinion the Court observed that

the licensing of these toy facsimiles was "more profitable than the television series itself." 658 F.2d at 79. Should the Court agree with the defendant that the legal question is not foreclosed, we would renew our suggestion that the question calls for legislative, rather than judicial, resolution (see 513 F.Supp. at 1070).

4. That there is no factual basis for this presumption in the instant record is illustrated by plaintiff's inability—at a pre-motion conference—to point to a scintilla of evidence suggesting that "any child, any father of a child, any mother of a child, any guardian of a child" was at all concerned with who manufactured or sponsored facsimiles of the "General Lee." Minutes of Pre-Motion Conference Sept. 7,

that this assumption is wholly unwarranted, and it asks leave to conduct discovery which, it asserts, would establish the contrary. Defendant further contends that it engaged in no deceptive practice warranting the imposition of sanctions upon it, but rather that it did no more than openly assert a right to share in whatever market may have been created by the success of plaintiff's television show.[5] As we read the Court's opinion, however, it is the law of this case that these contentions are simply no longer relevant to our consideration. The Court has conclusively presumed—from the conceded fact that the facsimiles manufactured by the defendant are immediately associated by children with plaintiff's show—both the desire of the plaintiff's audience for sponsored toys and the deliberate creation by defendant of sufficient confusion to warrant invocation of the protection of the Lanham Act. 658 F.2d at 78.

In light of this conclusive presumption and of the Court's express finding that "any lingering doubt" as to the existence of confusion (and of defendant's intent to induce it) is eliminated by the conceded fact that defendant intended its toys to be used by children in "Dukes of Hazzard" games, further discovery on this issue would appear to be inappropriate. Defendant's request for such discovery is accordingly denied.

In addition to defendant's central contention that an issue of fact remains as to the tendency of its cars to confuse purchasers as to their sponsorship, defendant suggests several other areas where further discovery might lead to evidence on the basis of which it could resist plaintiff's demand for a permanent injunction. Defendant's position as to these additional areas is not stated with the utmost clarity, and some of its contentions were abandoned in the course of pre-motion conferences. However, as we analyze defendant's position, it still contends that further discovery might establish any one of the following three "defenses":

(a) The design of defendant's car is "functional" in that it permits children playing with the car to pretend that they are characters in "The Dukes of Hazzard";

(b) Plaintiff has not exercised sufficient control over the quality of the "General Lee" facsimiles distributed by its licensees and has thus abandoned its claim to Lanham Act protection;

(c) By making unjustified threats of criminal prosecution for copyright infringement, plaintiff has deprived itself of the "clean hands" essential to equitable relief.

1982, pp. 12–14. In response to our invitation to search out any available evidence on this point plaintiff submitted a letter (made part of the record herein) dated September 13, 1982. That letter, however, merely reasserts the conceded fact that "plaintiff's television series was an important factor in motivating children to purchase" defendant's toy. It says nothing about the importance to anyone of the sponsored or unsponsored nature of the toy.

In the event that there should be a remand to determine the factual basis for the presumption that purchasers of toys care about—and thus may be confused as to—sponsorship of the toys, we assume that the focus of inquiry would be whether the consumers (children and/or their parents) would—if fully advised of all the facts—demand "sponsored" toys, or would prefer the lower prices presumably made available by unlimited competition and the elimination of the producer's royalty.

5. The only suggestion in the Court's opinion of deception on the defendant's part is a reference to an "affidavit which confirms that *retailers* sold [defendant's] car as 'The Dukes of Hazzard' car." 658 F.2d at 79 (emphasis supplied.)

Assuming such conduct on the retailer's part to have been improper, defendant itself never made such a representation and there is no evidence that it ever suggested that any retailer do so. Moreover, it seems doubtful whether, under the doctrine enunciated in *Societe Comptoir de l'Industrie etc. v. Alexander's Department Stores, Inc.* (2d Cir.1962) 299 F.2d 33, defendant could be criticized for making exactly those representations. It will be recalled that the Court there approved the use by a Dior imitator of the following television jingle (299 F.2d at 35, fn. 1):

Dior, Dior, Christian Dior, the latest, latest, Chicest, sleekest clothing you've been waiting for. That's Christian Dior,—Dior, Dior, Christian Dior for coats with an elegant swirl, Dior, Dior Christian Dior, whose dresses make you look like a girl. Suits fit floppier, they flatter any form, even if you're just above or below the norm. Dior, Dior, Christian Dior, the latest, latest, Chicest, sleekest clothing you've been waiting for. That's Christian Dior.

The first of these contentions is rather bizarre, at least if we correctly interpret the Court of Appeals opinion. As above indicated, we read that opinion as adopting the position that a television producer is entitled to monopolize any market created by the popularity of its shows. If this interpretation be correct, it would be a strange doctrine that would permit a defendant to avoid an injunction by showing its products to be "functional" in that they were expressly designed to defeat such monopoly.

While discovery as to the contentions raised in propositions (b) and (c) might on occasion be appropriate, we do not think that this is such a case. With respect to both the quality control exercised—or not exercised—by plaintiff, and plaintiff's quickly-withdrawn threat of criminal prosecution, we find that, even drawing all inferences in defendant's favor, the facts alleged do not justify denying plaintiff any equitable relief to which it might otherwise be entitled. *See DC Comics, Inc. v. Powers* (S.D.N.Y.1978) 465 F.Supp. 843, 849–50 (allegations by defendant of four years of "less than diligent . . . policing" by plaintiff of its trademark did not constitute abandonment by plaintiff of quality control sufficient to defeat its cause of action); *Wihtol v. Crow* (8th Cir.1962) 309 F.2d 777, 782 (judgment against plaintiffs not warranted by their demand that defendant pay them a "Statutory Fee" to refrain from instituting a criminal prosecution which it knew would not be sustained); *Rosemont Enterprises, Inc. v. Random House Inc.* (2d Cir.1966) 366 F.2d 303, (1967) *cert. denied* 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967) (valid defense possible where plaintiff—Howard Hughes—threatened to "cause trouble" in retaliation for defendants' plans to publish his biography, and subsequently obtained and brought suit based on copyrights to articles used in biography).

In brief, we interpret the Court of Appeals opinion as recognizing the plaintiff's claim to a monopoly which would enable it to profit from the demand for "General Lee" facsimiles created by the success of "The Dukes of Hazzard" show. The Court has accomplished this objective by creating a conclusive presumption that if children are reminded of the "General Lee" by seeing a facsimile thereof, they will assume distribution of the facsimile to have been "sponsored" by plaintiff. If that interpretation be correct, the defenses tendered by defendant would avail it nothing. We therefore grant plaintiff's motion for partial summary judgment permanently enjoining defendant from manufacturing or distributing any imitation of the "General Lee" or of any other element of plaintiff's television show "The Dukes of Hazzard."

The right to an injunction is the only important question presented by this litigation, and it is unlikely that the determination of such damages as may have been suffered by plaintiff would give rise to a legal question worthy of appellate review. Accordingly, we hereby certify that there is no just reason for delay and direct that final judgment for plaintiff be entered pursuant to F.R.C.P. 54(b).

Let plaintiff submit an appropriate judgment on five (5) days notice.

SO ORDERED.