DC COMICS, Plaintiff,

v.

KRYPTONITE CORPORATION,
Defendant.

No. 00 CV 5562 (RO).

United States District Court,
S.D. New York.

Sept. 20, 2004.

Patrick T. Perkins, Fross Zelnick Lerhman & Zissu, P.C., New York, NY, for DC Comics.

William R. Grimm, Hinckley Allen & Snyder, LLP, Boston, MA and Jonathan E. Moskin, White & Case LLP, New York, NY, for Kryptonite Corp.

### OPINION AND ORDER

OWEN, District Judge.

DC Comics, the publisher of comic books and magazines featuring Superman, filed the instant action in 2000 against Kryptonite Corporation ("KC"), the manufacturer of bicycle locks and accessories, alleging breach of contract, trademark infringement, unfair competition, trademark dilution, and related state law claims. KC, in turn, alleges as counter-claims: rescission, a declaration that DC Comics has no trademark rights in kryptonite, breach of contract, cancellation of DC Comics' trademark registration, and enjoining DC Comics from using and registering kryptonite for certain uses.

KC moves this Court for summary judgment on all the claims in DC Comics' complaint. DC Comics cross-moves for partial summary judgment on KC's counter-claims.

For the reasons set forth below, KC's motion for summary judgment is denied and DC Comics' motion for partial summary judgment is granted in part and denied in part.

### Background

"Bullets! ... Fire! ... Bombs! ... Acid! I'm immune to them all! But kryptonite is my Achilles heel ... the only substance in the world that can harm me!" Levitz Decl. ¶ 30.

The story of Superman is well known: While still an infant, Superman was sent by his parents to Earth aboard a space ship from his home planet Krypton. On Earth, Superman is secretly possessed of extraordinary physical abilities, including superhuman strength and speed, x-ray vision, the ability to fly, and the ability to withstand bullets. Superman's sole weakness is his vulnerability to several forms of Kryptonite, an element from Superman's home planet. The most well known form of Kryptonite is Green Kryptonite, which weakens and can kill Superman. DC Comics has also featured a variety of other forms of Kryptonite, including Gold Kryptonite, Blue Kryptonite, and Anti–Kryptonite. Compl. ¶ 9–22.

DC Comics invented Kryptonite in connection with the radio program *The Adventures of Superman* in 1943 and Kryptonite first appeared in movies in 1948 and in comic books in 1949. Writers at DC Comics have referred to Kryptonite as "the one substance that ... can overpower the Man of Steel," "Superman's one fatal flaw," and "the ghastly green substance" that is "the only thing the Man of Steel has to fear in the entire universe." Levitz Decl. ¶ 30.

Kryptonite Corporation ("KC") is a manufacturer of bicycle and motorcycle locks and accessories. KC's predecessor, KBL Corporation (which was short for Kryptonite Bike Lock, hereinafter "KBL") began using the "kryptonite" trademark on a limited basis in 1972 in connection with its security devices (principally bike locks) without the permission of DC Comics. Compl. ¶ 29.

DC Comics first discovered KBL was using the "kryptonite" trademark in 1976 when KBL applied to register "kryptonite bike locks" with the U.S. Patent and Trademark Office. Thereafter, DC Comics and KBL engaged in a series of correspondence concerning use of the "kryptonite" mark. This correspondence concluded with the execution of an agreement in early 1983 ("the Agreement").

The Agreement limited KBL's use (and by extension KC's use) to the following three marks: "Kryptonite," "Kryptonite and Design," and "Krypto Grip" (collectively "KBL's Marks"). The Agreement limited the use of the KBL Marks to the following products: "(1) security devices and accessories therefore, without limitation, such as mechanical and electronic locking means and accessories therefore, and (2) accessories primarily for two wheeled vehicles, such as handle bar grips ("KBL's products")." *See* Agreement, at 1.

KBL also agreed it would not expand its use of the KBL Marks to products other than the KBL Products and that KBL would "neither use nor apply for the registration of any Krypt formative marks other than KBL's Marks for KBL's Products." *Id.* at 2.

In addition, the parties agreed that KBL would not associate KBL Products with the "Superman, Superboy, Supergirl, Superkids, Super Jr., and Krypto the Superdog character, word mark and device mark … and shall not use either the word 'super' or a super formative word in the advertising, promotion, packaging or labeling of the KBL Products." *Id.* at 2.

DC Comics, in turn, agreed (1) it would not use DC's Marks[1] on KBL's Products and (2) it would not use DC's Marks in any manner to indicate that DC's Products[2] are sponsored by or affiliated with KBL or in any manner associate its products with KBL's Products. *Id.*

DC Comics contends that KC breached the Agreement when, in the late 1990's, KC filed trademark applications indicating an intention to use the "Kryptonite" trademark with products that were well beyond

locks and handle bar grips. For example, according to DC Comics, KC had applied to use KBL's Marks in connection with items including tote bags, briefcases, helmets, pants, jerseys, polishing agents, and computer hardware and software. Compl. ¶ 37.

Additionally, DC argues that KC is using and has applied for and/or registered "Krypto" stem words in violation of the Agreement, including "Kryptonium," "Kryptoflex," "Kryptovault," and "Kryptokoil." Compl. ¶ 36

Finally, DC Comics contends that KC used the word "super" in "advertising, promotion, packaging or labeling of KBL Products" which is expressly prohibited by the Agreement.

DC Comics also brings claims for infringement, unfair competition and dilution of DC Comics' kryptonite trademark under the Lanham Act, and for related state law claims based upon KC's impermissible use of kryptonite and of other confusingly similar krypto-formative marks and conduct designed to suggest a connection between KC's goods and the Superman legend and to unfairly capitalize on them.

KC filed counter-claims. KC's first counterclaim is for rescission of the Agreement based, among other things, on their claim that the purposes of the Agreement have been "substantially frustrated." KC's second counterclaim is for a declaration that DC Comics owns no trademark rights in kryptonite on the grounds that DC Comics has not used the words kryptonite or krypt in connection with the sale of goods or services in commerce. KC's third counterclaim is that DC Comics breached the Agreement by, among other

---

**1.** "DC's Marks" are defined as "Kryptonite, Krypton, Krypto the Superdog, It's Terrific, It's Fantastic, It's Kryptonastic, and The World of Krypton." *See* Agreement at 1.

**2.** "DC's Products" are defined as including "comic magazines, comic books and motion pictures and a general line of licensed merchandise …" *See Id.*

things, licensing the use of elements from the Superman Story for use on security devices and accessories for two-wheeled vehicles. KC's fourth counterclaim is for cancellation of DC Comics's trademark registrations of Kryptonite based on alleged non-use. KC's fifth counterclaim is to enjoin DC Comics from using and registering the Kryptonite mark in connection with two-wheeled vehicles.

### Summary Judgment Standard

Summary judgment is proper under Fed.R.Civ.P. Rule 56(c) where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment meets its burden by establishing an absence of evidence to support the opposing party's allegations. *Id.* at 325, 106 S.Ct. 2548. The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.Pr. 56(e).

██ In contract cases, "where contract language is ambiguous, the differing interpretations of the contract present a triable issue of fact" and thus summary judgment is not appropriate. *Consolidated Edison, Inc. v. Northeast Utilities*, 249 F.Supp.2d 387, 411 (S.D.N.Y.,2003) (citations omitted). Contract language is ambiguous if it is " 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement. . . .' " *Sayers v. Rochester Telephone Corp. Supplemental Management Pension Plan*, 7 F.3d 1091, 1095 (2d Cir.1993) (citations omitted).

██ "[C]ontract language is not ambiguous if it has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reason-

able basis for a difference of opinion." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir.1989).

### I. *Kryptonite Corporation's Motion for Summary Judgment*

#### A. *Breach of Contract*

KC has moved for summary judgment on the breach of contract claim arguing that there is an absence of evidence to support the DC Comics' allegations of a breach of contract.

#### 1. Definition of KBL Products

██ KC first argues that the definition of KBL's Products in the Agreement is unambiguous:

(1) security devices and accessories therefore, without limitation, such as mechanical and electronic locking means and accessories therefore, and

(2) accessories primarily for two wheeled vehicles such as handle bar grips.

Ag. 2.

KC argues that the plain meaning of this language is that KC can use its marks on *any type* of security device and accessory for two wheeled vehicles in *all* channels of trade without regard to the type of security devices and accessories it was manufacturing or selling in 1983. This interpretation, KC argues, is bolstered by the inclusion of the broad and expansive language "without limitation" and the absence of any limiting terms. KC also argues that the meaning of the terms "security device" and "accessory" are also unambiguous and should be afforded their usual meaning. They argue it is clear that the goods set forth in KC's trademark applications and registrations fit *squarely* within such meanings and do not breach the agreement.

DC Comics, on the other hand, argues that KC's reading ignores the plain language of the Agreement that expressly limited KC to those products with which it had used or registered the mark in 1983. DC Comics also argues that the only plausible reading of the "without limitation" language is that that phrase modifies the language that comes after "such as" and *clarifies* that the specific examples of "security devices" listed were not intended to be the *entire* list of permissible devices. DC Comics also argues that the term "security device" is ambiguous and that KC's attempt to create an unambiguous and "plain" meaning for "security device" by combining dictionary definitions of the words "security" and "device" further proves that the term is ambiguous.

I find that the definition of KBL Products in the Agreement is ambiguous and that there are triable issues of fact regarding what constitutes "security device and accessories" and whether the Agreement only covers products KC was making in 1983.

## 2. Associating with Superman and use of the word Super.

Next, KC argues that it did not breach the following provision of the Agreement:

KBL shall *not in any manner* indicate or suggest that KBL's Products are or were sponsored by or affiliated with DC, or in any manner associate its products with DC's Products,[3] or with DC's Marks,[4] ... in particular and without limitations KBL shall *not associate* with the Superman, Superboy, Supergirl, Superkids, Super Jr., and Krypto the Superdog character, word mark and device mark ... and shall not use either the word 'super' or a super formative word

in the advertising, promotion, packaging or labeling of the KBL Products.

Ag. ¶ 2. (emphasis added)

DC Comics, however, presents evidence of the following actions which they claim constitutes a breach by defendant under the Agreement not to associate its products "in any manner" with "DC's Products" and Superman:

The Glowing Green Brand Identity; comic book-style advertising; dissemination of press articles that associate Superman with KC; dissemination of ads and cartoons referring to Superman; use of phrases associated with Superman, such as "Men of Steel" and "Up, Up and Away," in promoting its products on its website; dissemination of a photo of KC's founder dressed in a Superman costume; adoption of "Super Villains" and masked cartoon characters reminiscent of DC Comics' comic book characters on the packaging and promotion of a line of products; instructing the designer of KC's web-site to "impart" to KC's site a "comic book style"; a newspaper article concerning KC that began with the phrase "And you thought only Superman was allergic to Kryptonite" which also included KC's address and telephone number.

Pl. Opp. Brief, 11.

I find triable issues of material fact regarding whether KC has breached the Agreement's prohibition against KC associating itself with DC Comics' characters or comic books "in any manner" thus making the breach of contract claim inappropriate for summary judgment.

In addition, as explained in section II–C in more detail, KC's use of the word "su-

---

**3.** "DC's Products" are defined as including "comic magazines, comic books and motion pictures and a general line of licensed merchandise ..." *See* Agreement at 1.

**4.** "DC's Marks" are defined as "Kryptonite, Krypton, Krypto the Superdog, It's Terrific, It's Fantastic, It's Kryptonastic, and The World of Krypton." *See Id.*

per" is a clear breach which would entitle DC Comics to summary judgment on *its* breach of contract claim.

Accordingly, summary judgment is denied as to the breach of contract claim.

KC raises statute of limitations, equitable estoppel, and waiver arguments, all of which the Court rejects.

### B.  *Trademark Infringement and Unfair Competition*

KC next argues that it is entitled to summary judgment on DC Comics' Lanham Act claims for trademark infringement and unfair competition.  The Lanham Act prohibits the use of:

> any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1).

In addition, the Lanham Act also protects both registered and unregistered marks against the use of:

> any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

15 U.S.C. § 1125(a).

■ For both Lanham Act claims, DC Comics must demonstrate (1) that it has a valid mark that is entitled to protection under the Act and (2) that there exits a *likelihood of confusion* that consumers will be misled or confused as to the *source* of the goods in question.  *Yurman Design, Inc. v. PAJ, Inc.* 262 F.3d 101 (2d Cir. 2001) at 115.

### 1.  **Ownership of valid mark**

KC argues that DC Comics' use of Kryptonite does not qualify for protection under the Lanham Act because DC Comics has not used Kryptonite as a brand name or trademark to indicate the source of its goods.

KC argues that DC Comics does not own the trademark in Kryptonite because DC Comics has never *used* the mark in commerce the only evidence of use is as a story element.  KC argues that Kryptonite is simply a fictitious substance that appears in the Superman story for *narrative*—not source identifying purposes.  According to KC, Kryptonite is one small part of the overall *content* of a comic book story used in the story to describe a fictitious substance and enhance the story -*not* to identify or designate the source of a real product or service.  KC contends that the word "kryptonite" (except as a name for KC's locks and other products) has no commercial meaning identifying the source of goods or services.

DC Comics, on the other hand, argues that it has made significant *use* of Kryptonite as a trademark on products *other than* comic products and motion picture products.  For example, DC Comics argues it has used Kryptonite with merchandise such as toys, apparel, books, calendars, games, greeting cards, novelty items, and video games.  In addition, DC Comics argues that it owns two trademark registrations for the use of Kryptonite on t-shirts which are incontestable (Number 1,231,983 registered 3/22/1983, and number 1,239,506 registered 5/24/1983).

## Analysis

■■ KC has failed to establish that as a matter of law that DC Comics does not own a trademark in Kryptonite. The Second Circuit has repeatedly held that the Lanham Act protects "a broad spectrum of marks, symbols, design elements and characters which the public directly associates with the plaintiff or its product." *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 78 (2d Cir.1981). It remains undisputed law of this Circuit that:

> where the product sold by plaintiff is 'entertainment' in one form or another, then not only the advertising of the product but also an ingredient of the product itself can amount to a trademark protectable under § 43(a) because the *ingredient* can come to symbolize the plaintiff or its product in the public mind.

*DC Comics, Inc. v. Filmation Associates*, 486 F.Supp. 1273, 1277 (S.D.N.Y.1980) (emphasis added).

■ Protectable "ingredients" recognized in this circuit include the names and nicknames of entertainment characters ("bionic" man and woman), as well as their physical appearances and costumes, but not their physical abilities or personality traits. *Id. See also, Warner Bros. v. Gay Toys*, 658 F.2d 76, 78 (2d Cir.1981); *Universal City Studios, Inc. v. T–Shirt Gallery, Ltd.*, 634 F.Supp. 1468, 1476, n. 9 (S.D.N.Y.1986) ("[i]t is not disputed that section 43(a)'s protections 'extend to the specific ingredients of a successful T.V. series' ").

In *DC Comics, Inc. v. Powers*, which is directly on point, an infringer attempted to publish a magazine under name "The Daily Planet"—the same name as the fictitious newspaper that employs Superman's alter ego, Clark Kent. There was nothing in the record that showed that DC Comics had used "The Daily Planet" on a product in the traditional trademark sense. However, the Court found that, because over time there had grown such a close association between the "The Daily Planet" and Superman, that DC Comics owned protectable rights in "The Daily Planet." 465 F.Supp. 843, 847 (S.D.N.Y.1978).

The factual record here demonstrates that DC Comics does own a valid trademark in Kryptonite. Kryptonite is an ingredient of an entertainment property (Superman) and is a protectable symbol under the Lanham Act. Kryptonite is closely associated with Superman resulting from DC Comics' 60 years of use of Kryptonite *with* Superman.

Here, I find that Kryptonite is an element associated with Superman entertainment products and it is thus entitled to protection. DC Comics' predecessor first introduced Kryptonite into the Superman story as part of the Superman radio program in 1943. Since that time, Kryptonite has been a staple of the Superman character and story. For example, several recurring characters created by DC Comics are based entirely around Kryptonite: the Kryptonite Kid, the Kryptonite Man, and Metallo (a villain powered by Kryptonite). Kryptonite has regularly appeared on licensed consumer merchandise over the years and the Kryptonite mark or the appearance of Kryptonite have been used in connection with consumer products such as toys, apparel, books, calendars, greeting cards, novelty items, and video games.

As a result of broad dissemination throughout all media, the fictional element Kryptonite, including its graphic depiction, has come to be recognized as a powerful symbol, and is immediately recognized or associated with the character Superman. As such, Kryptonite also serves to identify the entertainment and other goods and services created, distributed and/or licensed by or on behalf of DC Comics. Kryptonite, its green glowing appearance,

and other related indicia thus represent trademarks of DC Comics.

## 2. Likelihood of Confusion

■ As to the second element of trademark infringement, KC argues DC Comics cannot prove there is a likelihood of confusion as to the origin of the goods at the consumer level between DC Comics' mark and KC's mark. In analyzing the likelihood of confusion, this Court must determine whether numerous ordinary purchasers are "likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark." *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir.1993).

■ The Second Circuit has set forth a set of eight factors for courts to consider in determining whether a likelihood of confusion exists: (1) the strength of DC Comics' mark; (2) the similarity of the DC Comics' mark; (3) the competitive proximity of the products; (4) the likelihood that the DC Comics will "bridge the gap" by entering KC's market; (5) actual confusion between the products; (6) good faith on KC's part; (7) the quality of KC's product; and (8) sophistication of buyers. *See Polaroid Corp. v. Polaroid Elec. Corp.*, 287 F.2d 492, 495 (2d Cir.1961). Summary judgment in a trademark action is appropriate where the undisputed evidence would lead to only one conclusion as to whether confusion is likely. *Cadbury Beverages, Inc. v. Cott Corporation*, 73 F.3d 474, 478 (2d Cir.1996).

## Analysis

■ Summary judgment is not appropriate here because there are a number of triable issues of fact regarding likelihood of confusion. For example, KC argues that there is no actual confusion between the products. However, DC Comics argues that KC's own founder testified that

he has been asked "numerous, numerous, numerous times" whether there is an association between KC and DC Comics.

Accordingly, KC's motion for summary judgment is denied as to all claims, including the trademark and unfair competition claims.

## II. *DC Comics' Cross–Motion for Partial Summary Judgment*

DC Comics has cross moved for summary judgment on the following counterclaims: 1) rescission of the Agreement; 2) a declaration that D.C. Comics owns no trademark rights in Kryptonite; 3) breach of contract; 4) cancellation of DC Comics' trademark registrations for Kryptonite; and 5) enjoining DC Comics from using and registering the Kryptonite mark in connection with two wheeled vehicles. DC Comics also requested judgment as a matter of law that KC has breached the Agreement by using (a) "Krypt-formative" marks other than Kryptonite and Krypto Grip and (b) the term "Super."

### A. *Rescission of the Agreement*

■ KC's first counterclaim for rescission is based in part on DC Comics' (1) alleged authorization of third parties to use Krypt-formative marks; (2) alleged authorization of one of KC's competitors to use Kryptonite; (3) alleged licensing of elements from the Superman story for use on security devices and accessories for two-wheeled vehicles; and (4) alleged abandonment of its trademark rights in Kryptonite.

■ In order to obtain rescission of a "freely bargained" trademark settlement agreement such as the one at issue in this case, "a party must show that the public interest will be significantly injured if the contract is allowed to stand." *Times Mirror Magazines, Inc. v. Field & Stream Licenses Company*, 294 F.3d 383, 396 (2d Cir.2002). *In Times Mirror Magazine,*

the Court of Appeals went on to hold that "[s]imple fairness requires holding a party to its contract unless adhering to the contract will damage the public and not just a contracting party." *Id.* The Court defines this damage to the public interest as a threat to the "health or safety" of the public by virtue of confusion." *Id.*

KC cannot show any public injury and accordingly, the Court grants summary judgment dismissing the first counterclaim regarding rescission of the Agreement.

### B. *A declaration that D.C. Comics owns no trademark rights in Kryptonite.*

KC's second counterclaim seeks a declaration that DC Comics "enjoys no trademark rights in and to the name 'Kryptonite.'"

DC Comics argues that it *does* own trademark rights in Kryptonite in two ways:

1) trademark rights flow from kryptonite's appearance in Superman entertainment products; and 2) DC Comics owns trademark rights in *consumer products* that have included the Kryptonite trademark including toys, apparel, books, calendars, games, greeting cards, novelty items, and video games.

The Court finds that DC Comics does own trademark rights in Kryptonite. See Section B(1) *supra.*

Accordingly, I grant summary judgment dismissing the second counter-claim.

### C. *Breach of Contract*

KC's third counterclaim alleges that DC Comics has breached ¶ 2 of the Agreement which provides:

DC shall not in any manner use or refer to DC's Marks in any manner to falsely indicate or suggest that DC's Products are or were sponsored or affiliated with KBL or in any manner associate DC's

Products with KBL or with KBL's Products or with any part thereof or authorize or permit any of its licensees to do any of the foregoing. ¶ 2.

DC agrees not to use DC's Marks on KBL's Products. ¶ 3.

■ KC alleges that DC Comics has breached the Agreement by entering into licensing agreements with third parties. However, this is without merit for two reasons. First, the agreement between DC Comics and a third party company called Kryptonics was in 1982—*before* the 1983 Agreement at issue in this case was even entered into. Second, the agreement between DC Comics and a third party company called PTV was not a *license,* it was a settlement agreement. Therefore, the above provision (which deals with licensees) does not apply.

■ However, I do find triable issues of fact regarding KC's claim that DC Comics has violated the Agreement by associating DC's Products with KBL's Products. Under the Agreement, DC Comics may not associate DC' Products with KBL or KBL's Products. DC Comics' Products are defined as comic magazines, comic books, motion pictures, and a general line of licensed merchandise. KBL's Products are defined as security devices and accessories and accessories for two-wheeled vehicles.

DC Comics itself admits that it licensed Superman and related indicia for various products including: bicycle bags, bicycles, scooters, tricycles, bicycle number plates, bicycle decals, bicycle directional signals, bicycle handlebar grips, bicycle streamers, training wheels, and bicycle water bottles. *See* Declaration of Paul Levitz, ¶ 16.

Here, there are outstanding ambiguities regarding the scope and definition of DC's Products and KBL's Products and whether DC Comics' admitted conduct violates the Agreement. Accordingly, summary judgment to defendant is denied.

**D. Cancellation of DC's trademark registrations for Kryptonite**

█ KC's first and fourth counterclaims allege that DC Comics has abandoned its rights in the Kryptonite trademark.

█ In order to establish its claim that DC Comics has abandoned its rights in the Kryptonite trademark, KC is required to demonstrate (1) *non-use* by DC Comics and that (2) an intent not to resume use. *Columbia Pictures Industries, Inc. v. Screen Gems Film Co., Inc.,* 2001 WL 1254838 at *5 (S.D.N.Y. October 18, 2001) (finding that Screen Gems mark was not abandoned based upon inclusion of mark on marketing materials). When considering whether a mark has been abandoned, the court must consider the trademark owner's business to determine what constitutes *use* of the mark. *Stetson v. Howard D. Wolf & Assocs.,* 955 F.2d 847, 851 (2d Cir.1992).

It is undisputed that DC Comics' predecessor first introduced Kryptonite into the Superman story as part of the Superman radio program in 1943. Since that time, Kryptonite has been regularly featured in DC Comics' comic books, motion pictures, and television programs. Kryptonite has regularly appeared on licensed consumer merchandise over the years and the Kryptonite mark or the appearance of Kryptonite have been used in connection with consumer products such as toys, apparel, books, calendars, games, greeting cards, novelty items, and video games.

KC argues that these examples of Kryptonite products do not constitute "trademark use" protectable under the Lanham Act. KC argues that DC Comics uses the word Kryptonite only as a story element or character and *never* as a brand name or trademark to indicate the source of its goods. However, as stated above, ingredients of entertainment properties constitute protectable symbols under the Lanham Act.

█ Moreover, the United States Patent and Trademark Office was fully satisfied with DC Comics' use of Kryptonite (in connection with apparel) and issued two federal registrations to DC Comics (one in March of 1983 and the other in May of 1983). Those registrations are incontestable pursuant to the Lanham Act. 15 U.S.C. § 1065. As a matter of law, defendant is statutorily precluded from challenging DC Comic's use of Kryptonite on t-shirts as not trademark use. *Park N' Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 196–97, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). The evidence is undisputed that current DC Comics licensees sells Kryponite t-shirts. (Ex. 80 and 88).

There is no genuine issue of material fact that DC Comics has not stopped using its Kryptonite mark let alone demonstrated any intent not to resume use of the mark. As a result, KC's first and fourth counterclaims (to the extent based on abandonment) are dismissed as a matter of law.

**E. KC's motion to enjoin DC Comics from using and registering the Kryptonite mark in connection with two wheeled vehicles.**

█ Defendant's fifth counterclaim requests that the Court rule that DC Comics' current trademark application to register Kryptonite for two-wheeled vehicles, namely, ride-on toys and toy vehicles would violate KC's rights in Kryptonite.

The only restrictions placed upon DC Comics' use of the Kryponite mark in the Agreement are: (1) it will not use DC's Marks on KBL's Products and (2) it will not use DC' Comics' Marks in any manner to indicate that DC's Products are sponsored by or affiliated with KBL or in any manner associate its products with KBL's Products. See Agreement ¶ 2,3. Other-

wise, the Agreement provides to DC Comics the *absolute right* to use the Kryptonite the mark.

However, as explained above, I find a triable issue of fact regarding the definition of KBL Products and DC Comics' Products. Accordingly, I deny summary judgment to KC as to this claim.

### F. *DC Comics' motion for Summary Judgment on Two Aspects of KC's Breach of Contract Claim*

DC Comics asks for Summary Judgment on its claim that KC breached the contract by 1) using Krypt-formative marks (i.e. using stem words beyond those allowed in the Agreement) and 2) the term "Super" are in violation of the Agreement. Paragraph 1 of the Agreement prohibits KC from using "the word 'SUPER' or a SUPER formative word in the advertising, promotion, packaging or labeling" of its products. Paragraph 4 of the Agreement further prohibits KC from applying "for registration of any krypt formative marks other than" Kryptonite and Krypto Grip. KC concedes that it has used the term "Super" in violation of Agreement. KC also concedes that has used the impermissible Krypt formative marks in violation of the Agreement. KC's defenses to these breaches are without merit.

Accordingly, summary judgment is granted to DC Comics as to these portions its breach of contract claim.

Submit order on notice.